UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

CIVIL ACTION NO. 18-10707-RWZ

MICHAEL E. SRYBNY

v.

ANDREW SAUL,[1]
Commissioner of the Social Security Administration

MEMORANDUM OF DECISION

February 20, 2020

ZOBEL, S.D.J.

Michael E. Srybny ("plaintiff" or "claimant") appeals from a final decision by the Commissioner of Social Security ("the Commissioner") upholding an administrative law judge's ("ALJ") denial of plaintiff's application for Disability Insurance Benefits ("DIB") under Title II of the Social Security Act. 42 U.S.C. §§ 401–433.

I.  **Background**[2]

Plaintiff was diagnosed in 2002 with Crohn's disease, which was manageable until December 22, 2014, when he reported to the emergency room with abdominal

---

[1] Pursuant to Fed. R. Civ. P. 25(d), Andrew Saul has been substituted for Nancy A. Berryhill as Commissioner of the Social Security Administration.

[2] After the ALJ denied his claim, plaintiff submitted supplemental medical evidence from his treating physician to the Appeals Council. I am restricted, however, to the record before the ALJ, even when the Appeals Council permits claimant to offer new evidence into the record before denying review. See LeBlanc v. Halter, 22 F. App'x 28, 29 (1st Cir. 2001) (citing Mills v. Apfel, 244 F.3d 1, 5 (1st Cir. 2001)).

1

discomfort. He had surgery for a perforation and abscess of his bowel, and returned to the hospital two more times, on January 10 and 29, 2015, when the abscess had to be drained again. Then, on April 3, he underwent a planned partial colectomy to address the persistent abscess.

On discharge from his January 29 visit, plaintiff reported having bowel movements, with no mention of diarrhea, while on February 11, he explicitly reported "no diarrhea." On May 6, he saw Dr. Francis MacMillan, his gastroenterologist, for the follow up visit to the partial colectomy. Plaintiff described his stool frequency as once daily. By June 9, he reported to Dr. MacMillan that he had some accidents and was going to the bathroom three to four times a day; nevertheless, the doctor suggested he was "over the worst."

A follow up colonoscopy in July revealed no findings suggestive of Crohn's disease. By December 1, 2015 Dr. MacMillan noted that, although plaintiff had regained 21 pounds and the Crohn's disease appeared to be in remission, plaintiff's diarrhea was poorly controlled, with eight to twelve bowel movements per day. The doctor prescribed amitriptyline and instructed plaintiff to call him in one to two weeks to follow up on the medicine's effectiveness. Treatment notes do not state whether plaintiff called.

Six months later, on May 2, 2016, plaintiff had his annual physical with Dr. Shiao-Ang Shih. He was maintaining his weight but reported again having eight to ten bowel movements a day. On July 5, he complained to Dr. MacMillan that his diarrhea could

2

be very disruptive.  Again, his weight was steady.  In August 2016, an endoscopy and colonoscopy revealed no evidence of Crohn's disease.

Plaintiff applied for DIB on January 10, 2015 when he was suffering from the abscess of his bowel. The ALJ held a hearing on November 21, 2016.  Plaintiff testified about his several gastrointestinal difficulties, including abdominal pain, frequent diarrhea, accidents, and trouble digesting food.  He also submitted two medical source statements from Dr. MacMillan, dated October 13, 2016, and November 9, 2016.  These appear to be filled out in different handwriting but contain the same signature.  In answer to the question "does your patient need a job that permits ready access to a restroom?" the first statement says no, whereas the second statement says yes.  In answer to "will your patient sometimes need to take unscheduled restroom breaks during a workday?" the first says "unknown" and the second says "quite possibly, but unable to measure."  The doctor answered "not assessed" or "unknown" to the majority of the rest of the questions on both statements.

The ALJ denied plaintiff's claims; plaintiff appealed to the Appeals Council on June 28, 2017. The request for review was denied February 12, 2018, making the ALJ's ruling the final decision of the Commissioner for purposes of review.

A. **Applicable Statutes and Regulations**

To receive DIB benefits, a claimant must be unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which ... has lasted or can be expected to last for a continuous period of not less than

12 months." 42 U.S.C. § 423(d)(1)(A).  The impairment or impairments must be "of such severity that [a claimant] is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy."  Id. § 423(d)(2)(A); see also 20 C.F.R. § 404.1505(a).  The ALJ analyzes whether a claimant is disabled by using an established five-step sequential evaluation process.  See 20 C.F.R. § 404.1520(a)(4)(i)–(v).  If any of the steps conclusively yields the answer that the claimant is disabled, the ALJ so determines and does not proceed to the next step.  Id. at 404.1520(a)(4).

### B. The Five Step Framework and the ALJ's Decision in This Case

Step 1 The ALJ must first decide whether the claimant is currently engaging in substantial gainful work activity, which would mean he is not disabled.  20 C.F.R. § 404.1520(b).  In this case, the ALJ found that plaintiff was not currently so engaged and, therefore, moved to Step 2.

Step 2 At this step, the requirement is that the claimant's impairments be "severe," defined as "significantly limit[ing] [his] physical or mental ability to do basic work activities," id. § 404.1520(c), and that it lasted or must be expected to last for a continuous period of at least twelve months (the "durational requirement"), 20 C.F.R. § 404.1509.  Here, the ALJ found that claimant's "Crohn's disease status post right colectomy" was a severe medical impairment, but she did not explicitly make a finding regarding the durational requirement.

Step 3 This step calls for the ALJ's decision whether the impairment meets or equals an entry in the Listing of Impairments, 20 C.F.R. § 404, Subpt. P, App. 1, and, again, whether it meets the durational requirement.  20 C.F.R. § 404.1520(4)(iii).  If so, the claimant is considered disabled.  If not, the ALJ must next determine the claimant's residual functional capacity ("RFC"), which is "the most [a claimant] can still do despite [his] limitations."  20 C.F.R. § 404.1545(a)(1).

The ALJ in this case determined that plaintiff's Crohn's disease did not meet or medically equal the criteria of Listing 5.06 (Inflammatory Bowel Disease) because his gastroenterologist did not support such a finding.  She also referenced the statement of one of the two state medical experts, who "opined that the claimant medically equaled Listing 5.06a, however, subsequently acknowledged that the claimant's condition did not meet the necessary 12-month durational requirement."  Claimant further failed the requirement of Listing 5.08 (weight loss due to any digestive disorder) because his body mass index simply did not meet the threshold.

Based on these findings, the ALJ then determined plaintiff's RFC to be "light work…except with additional limitations" that included the need for ready access to a bathroom.  In landing on this RFC, she noted that plaintiff received relatively infrequent treatment after July 2015 and that his complaints did not support the extent of the limitations alleged.  At the same time, she declined to ascribe any weight to plaintiff's two medical source statements by the treating physician, Dr. MacMillan, because the assessments were dated less than one month apart, appeared to be written by two

different individuals, lacked any specificity, and were inconsistent with the doctor's own treatment notes.

Step 4 calls for a decision whether the claimant's RFC allows him to perform his past relevant work. 20 C.F.R. § 404.1520(f). If so, he is not disabled. Here, the ALJ found that Mr. Srybny would not be able to perform his previous job of concrete form setter. That leads to

Step 5 which places on the Commissioner "the burden . . . of coming forward with evidence of specific jobs in the national economy that the applicant can still perform." Seavey v. Barnhart, 276 F.3d 1, 5 (1st Cir. 2001); see also 20 C.F.R. §§ 404.1560(c)(2). The ALJ consults a vocational expert ("VE") and/or the Medical-Vocational Grid Rules ("Grid Rules")[3] to determine whether the claimant can do other work in light of his RFC, age, education, and work experience. In doing so, the ALJ in this case concluded that there are such jobs for Mr. Srybny and, therefore, denied the claim.

### C. Standard of Review

The Commissioner's findings of fact are conclusive if based on the correct legal standard and supported by substantial evidence. 42 U.S.C. § 405(g); Seavey, 276 F.3d at 10. The substantial evidence standard is "not high" and only requires "such relevant evidence as a reasonable mind might accept as adequate to support a

---

[3] The Grid Rules, 20 C.F.R. § 404, Subpt. P, App. 2, contain a matrix of exertional capacity, age, education, and work experience. If a claimant's limitations are exclusively exertional, the ALJ can rely solely on the Grid Rules to meet the burden at Step 5.

conclusion." Biestek v. Berryhill, 139 S. Ct. 1148, 1154 (2019) (quoting Consol. Edison Co. v. NLRB, 305 U.S. 197, 229 (1938)).  So long as the Commissioner's determinations are supported by substantial evidence, they must be affirmed, "even if the record arguably could justify a different conclusion." Rodriguez Pagan v. Sec'y Health & Human Servs., 819 F.2d 1, 3 (1st Cir. 1987) (per curiam).  Further, resolving credibility issues "and the drawing of permissible inference from evidentiary facts are the prime responsibility of the [Commissioner]." Rodriguez v. Sec'y of Health & Human Servs., 647 F.2d 218, 222 (1st Cir. 1981) (quoting Rodriguez v. Celebrezze, 349 F.2d 494, 496 (1st Cir. 1965)).

## II.     Discussion

Plaintiff challenges the ALJ's determinations, claiming that she 1) erred in finding that the plaintiff's condition did not meet the twelve-month durational requirement; 2) did not follow the treating physician rule; 3) drew improper inferences from the medical records; and 4) did not give proper weight to plaintiff's testimony regarding his symptoms.[4]  Plaintiff also alleges the ALJ failed to consider his hernia as a physical limitation.

---

[4] In his reply memorandum, plaintiff also appears to impute error at Step 3 by differentiating his chronic diarrhea as an independent impairment worthy of consideration as a severe impairment, rather than as a symptom of Crohn's disease.  I decline to adopt this view because plaintiff would fail to meet his burden at Step 3 of showing that chronic diarrhea would meet the durational requirement since the first mention of diarrhea in the medical records is on December 1, 2015.  Moreover, most of the ALJ's concerns still apply to diarrhea as a separate ailment, given the vagueness of the treating physician's statements regarding the severity of symptoms, the infrequency of plaintiff's later treatment, and the plaintiff's ability to maintain his weight.

### A. Twelve-Month Durational Requirement

Plaintiff contests the ALJ's holding that his condition did not meet the twelve-month durational requirement. In so finding, the ALJ specifically cited the medical consultant's conclusion to that effect. Later in her opinion, the ALJ also spent considerable time explaining the evidence suggesting the severity of plaintiff's impairment diminished over the course of treatment. She notes that his treating physician reported no signs of Crohn's disease in July 2015, that it was in remission in December 2015, and that plaintiff was maintaining his weight. This is sufficient evidence that his condition would not last at least twelve months.

### B. The Treating Physician Rule

Mr. Srybny also argues that the ALJ violated the treating physician rule in its consideration of Dr. MacMillan's two medical source statements. The rule simply says that ALJs generally give more weight to medical opinions from treating sources, unless there are "good reasons" otherwise. 20 C.F.R. 505.1527(c)(2). But the ALJ is not required to give a treating source opinion greater weight. Arroyo v. Sec'y of Health & Human Servs., 932 F.2d 82, 89 (1st Cir. 1991). In determining the weight to be given, "[t]he better an explanation a source provides for a medical opinion, the more weight [the ALJ] will give that medical opinion." 20 C.F.R. 404.1527(c). Here, the ALJ pointed out that the two statements provided by Dr. MacMillan were vague, and indeed, the doctor did not answer the majority of questions on the forms, including those regarding the frequency, duration, or urgency of plaintiff's bathroom breaks. Further, the

statements were inconsistent with Dr. MacMillan's own contemporaneous treatment notes. These conclusions constitute "good reason" for the ALJ's credibility judgment.

### C. ALJ's Inference from the Record

Plaintiff further argues that the ALJ improperly inferred from Mr. Srybny's limited follow up treatment that his condition was not as severe as now suggested. "[T]he drawing of permissible inference from evidentiary facts [is] the prime responsibility of the [Commissioner]," Rodriguez, 647 F.2d at 222, and conflicts in the evidence must be determined by the Commissioner, not the court. Irlanda Ortiz v. Sec'y of Health and Human Servs., 955 F.2d 765, 769 (1st Cir. 1991). Plaintiff asserts no error, only his disagreement with the ALJ's weighing of the evidence. This is not enough to overturn her decision.

### D. Weight Given to Plaintiff's Testimony

Plaintiff next argues the ALJ gave insufficient weight to plaintiff's testimony regarding the severity of his symptoms. Specifically, he claims that the ALJ's crediting the vocational expert's finding that he must work near a bathroom was logically inconsistent with the ALJ's disbelief of his testimony regarding the need to use the bathroom frequently. But he blurs two distinct concepts here: namely plaintiff's need for access to a bathroom and the amount of time that he would need to spend in that bathroom. It is entirely consistent for the ALJ to find that he frequently needs access to a bathroom but not accept his testimony about how long he would be off task to use it. Furthermore, the ALJ's determinations regarding subjective symptoms are entitled to

9

deference. Frustaglia v. Sec'y of Health & Human Servs., 829 F.2d 192, 195 (1st Cir. 1987).

### E. Plaintiff's Hernia

Finally, plaintiff alleges that the ALJ failed to consider his hernia as a physical limitation affecting his ability to work. But the ALJ does consider the hernia in stating that physical examinations of plaintiff "reveal[ed] no more than abdominal tenderness, a scar from his past surgeries and a reducible ventral hernia." Moreover, it is the plaintiff's burden to show that he is disabled and that his impairment prevents him from engaging in substantial gainful activity. Guyton v. Apfel, 20 F. Supp. 2d 156, 161 (D. Mass. 1998). The plaintiff himself only said the hernia restricted him from lifting over 25 pounds, which the RFC accommodates. He alleged no other limitations based on his hernia.

### III. Conclusion

Given the ALJ's extensive analysis of the entirety of plaintiff's treatment course, her decision is fully supported by substantial evidence. The motion to reverse or remand (Docket # 9) is DENIED; the motion to affirm (Docket # 14) is GRANTED. Judgment may be entered affirming the Commissioner's decision.

|  |  |
|---|---|
|   February 20, 2020 |   /s/ Rya W. Zobel |
| DATE | RYA W. ZOBEL |
|  | SENIOR UNITED STATES DISTRICT JUDGE |